V. Contreras-Cisneros Barbara Valliere Good morning. I'm Barbara Valliere on behalf of the United States. We would ask that the Court dismiss this appeal because there's no valid or culpable double jeopardy claim. And before I start to address the dual sovereignty doctrine, I think it's important for the Court to understand that in this particular case, the double jeopardy clause is generally implicated when the defendant is prosecuted for the same offense twice. Here, the state prosecution was for possession with the intent to sell methamphetamine. The federal prosecution is for conspiracy to distribute methamphetamine. As the Supreme Court has said, and as this Court has said repeatedly, the conspiracy to commit an offense and the substantive offense are different offenses. And therefore, under clear case law, the double jeopardy clause is not even implicated in this case, and you need not even go to the dual sovereignty doctrine. This, I think, was raised before the district court, and for reasons that are not clear to me on the record, the district court never resolved this question, even though it had been raised by the government that the double jeopardy clause was not even implicated. So my first argument is that the Court should dismiss for lack of jurisdiction because these are just separate offenses. And I think it's important to note, as well, is the government did not charge the substantive offense in the federal case. It merely charged the defendant with conspiracy. Kagan. Is it the same conduct? It is the same conduct, Your Honor. However, of course, it's the Blochberger test that applies. It's the separate offense test that applies, not the same conduct offense, for purposes of the double jeopardy analysis. So this is not a culpable claim as a matter of law. But even if the Court were to conclude either that the government has waived this in some way or go on to determine that it does have jurisdiction to decide the dual, the dual sovereignty doctrine, the question of the dual sovereignty doctrine, I think it's important, of course. Kagan. Counsel, let me interrupt you before you go on. Okay. On the question of jurisdiction, doesn't the Court hasn't, the Court's held that the defendant need only raise an argument with some validity. Are there any cases on point that would say that this claim would not amount to having some validity? I think the strongest case for the government, of course, is either United States v. Hickey, which basically describes what some validity means. But I think that the some validity means it has to have legal validity. In this particular case, the United States v. Felix, which is a Supreme Court case, has held that a substantive offense is different from a conspiracy, as well as United States v. Saccascio in this Court has held that a conspiracy is different than the substantive offense. So before you even get to discussing the different sovereigns involved, you have to resolve the question for yourself that these are different, whether or not these are the same offense. And I think the case law quite clearly establishes that they are not. All right. Thank you. But going on to the argument that my opponents made here this morning, the district court had a full hearing in this case, which I think is important, and made factual findings as well as came to conclusions based on that hearing regarding whether or not the Barkis exception applied on these facts. The Barkis exception is very narrow, as the Court has earlier indicated, and it applies when the essentially the dual sovereignty is a sham or a tool or there is basically there's been a breakdown between the two sovereigns so that they've almost melded into one. Here, the district court, after a full hearing, made four significant findings. It first felt that the DEA, the DEA did request the surveillance. I don't think there's any dispute of that, that the DEA asked the State operators to survey this particular white van and to, if they developed independent probable cause, to stop the van. And the Court concluded that the State police had stopped the car for traffic violation for speeding. The Court also found, quote, in the State prosecution of the defendant other than this oral request. The Court went on to find that after arrest, there was no subsequent Federal involvement in the State prosecution and no communication between the two sovereigns after the DEA's initial request. And finally, what the Court found, and again, this is after a full hearing, and this Court reviews those factual findings for clear error, the Court found that evidence in this case simply suggests that State and Federal officers, excuse me, State and Federal enforcement authorities cooperated with each other, which this Court has concluded in Figueroa de Soto and many other cases is perfectly permissible. And I can go on to say that the record here, since you're reviewing for clear error, unequivocally demonstrates and supports the district court's conclusion. First, the evidence shows that the DEA simply made the request. The agents, Special Agent Morajan, testified that she requested and asked the State police officers, Sergeant Moore in this case, to make a stop because they did believe that there may be drugs in that van, but that, indeed, they did not want to interrupt their investigation because they had an informant. Agent Moore, I mean, excuse me, Sergeant Moore and the other Special Agent Ficoccio both corroborated Special Agent Morajan's testimony that she both requested the stop and that the State officer had to develop independent probable cause. Second, it's undisputed that there was no contact at all between the agencies after the defendant was arrested. The testimony was clear from all of the agents that on the day of the arrest, that was the last contact between the DEA and the State officials. So that the decision to institute the prosecution, the charges that were prosecuted and the conduct of the trial, there was no communication? Yes, Your Honor. I want to correct. The defendant pled guilty in the State court, so there was never a trial. Negotiation. Yes. But, yes, that was actually my next point, which is there was absolutely no evidence that the Federal officials, the DEA, ever directed anything with regard to the State prosecution. There was no discussions regarding which charges to bring. There was no discussion about what disposition there should be. There was no request by the DEA that the State officials actually keep this wall stop or its wall stop under wraps in the State court proceedings. There was a request, certainly on the day of the arrest, that they not reveal the DEA's involvement. But there's no communication between the two parties, between the DEA and the State officials, all the way up to the time of the preliminary hearing and thereafter. It's hard for the defendant to meet its burden of showing that that request, that the informant be kept silent at the preliminary hearing, was made on behalf that the DEA actually made that request. There was no communication. The State officer did testify that he did keep it out of his reports and that when asked the question, that he did inform the DEA before the preliminary hearing in the State court that, in fact, he was, that there had been this DEA involvement. And, in fact, the DEA told him at the time, if you're asked the question, answer it honestly. He wasn't asked the question during the hearing. The evidence also supports here, and I think this is important for the dual sovereignty doctrine, that there was an independent State interest here. I mean, part of the problem was that the DEA at the time was conducting this larger investigation or surveillance. They knew that the drugs might be taken out of the area. And rather than blow their entire cover, they contacted local law enforcement, San Jose, to make the stop and essentially, if they could develop independent probable cause, which there was no dispute they had, then, in fact, to proceed however they would proceed, but they would prefer prosecution in State court. The State officials certainly had an interest in prosecuting the defendant because he was traveling in the streets of San Jose with about 12 and a half pounds of methamphetamine. And this evidence also shows that that State interest, the vindication of that State interest, did not vindicate in any way the Federal interest. The Federal interest here was in prosecuting the broader conspiracy, which is what he's charged with now. And that broader conspiracy included additional conduct on the part of the defendant as well as a broad conspiracy that stretched from not only through Mexico all the way up through California. So the bottom line is essentially that there is no – there was no evidence to support that this was a sham tool or a cover for a separate Federal prosecution. And so, therefore, the defendant failed to meet the Barkas exception. But I want to address it with my few minutes left. The claim in the State court that somehow that the defendant was precluded because something was concealed from him in the State court, from – that that is an independent basis for the court to conclude that there's a double jeopardy violation. Again, the court here is not writing on a blank slate. In United States v. Lewis, the court – this court specifically said that you cannot litigate a Brady claim in the context of a double jeopardy challenge. Secondly, of course, procedurally, the defendant does have a right to go back and challenge his State prosecution if he believes that something was concealed. Even though he's now out of prison, he can certainly – he can challenge the prosecution itself. Third, substantively, there's no reason, and I've seen no case law to actually even suggest, that the defendant was entitled to this information before a preliminary hearing. And if a full-blown Brady analysis were done substantively, it's clear that it was not material to the question at the preliminary hearing anyway, which was probable cause. Also, I have to say that there's nothing theoretically that keeps the defendant from moving to suppress the evidence in Federal court if he believes there's a challenge to the stop and the legality of the stop on Fourth Amendment grounds. I think it's going to be tough, considering that the district court has now concluded that there was, in fact, a traffic stop and that never really was a dismissal of the indictment. It's not tight at all. But also, just one more thing, Your Honor, and that's with regard to the role of the defendant. It is not true that the DEA concluded that he was a mere courier. The agent who testified, and this is excerpts of Record 172b, said that he may have been a mere courier, but he could have been Pablo Escobar for all we knew. On your first point about you're charging him with a conspiracy, the indictment charges him with other counts in addition. No, Your Honor. It charged this defendant only with a conspiracy count. Okay. Thank you. Briefly. Well, first let me say that I'm very surprised to hear the government make a Blockburger argument which was not litigated in the district court, was not presented in the government's brief here. It has not been litigated by either party. It has been waived. It's not appropriate for decision. And regardless of that, it is another aspect of the control that the government exercised, because the State court could only charge a case with the hands it was dealt. The State court was not dealt a hand that included the names or identities of co-conspirators. So all the State could charge at that point was the single defendant who was in the car. Now the DEA is willing to release information about the co-conspirators, so they're charged in a larger case. So that, again, goes to the way that the State case was manipulated for the benefit of the Federal government. The government has not addressed the fact that the adversarial process was essentially undermined by the concealment of this information during the State case. The government, as it did earlier, attempts to shift blame to the State actors. But as Judge Ware found during his comments in the district court, the State actors were all operating under the same approach to try to assist the DEA and try to maintain the secrecy about the DEA's overall investigation. They were not putting their own reputations on the line. They were not acting as rogue officers or rogue district attorneys, doing these things for their own benefit. We do understand your position, Mr. Time. The case just argued is submitted, and the Court appreciates the quality of argument on both sides. Thank you.
judges: Schroeder, Nelson, Reinhardt